And may it please the Court, my name is Tracy Staub. I'm here on behalf of Roland Winfrey. We're the appellants in this matter. There are several issues raised in the briefing. If the Court pleases, I would like to start with the sentencing issue. That probably has the most recent and interesting Supreme Court case related to it. At sentencing, Mr. Winfrey objected to the increase, a four-level enhancement to his sentencing based on 2K2.1b6, which is using a firearm in connection with another felony. And in this case, the government alleged that he had used the firearm in connection with a prior drug trafficking because he had traded his drugs for a gun. So he had received a gun in receipt for gun or for drugs. I apologize. Anyway, he made the argument at sentencing that that was not quote-unquote use. The district court rejected that argument, added the four-level enhancement, and subsequently on December 10, 2007, the Supreme Court came down with Watson v. United States, which interpreted 924, but basically the same provision saying receiving a gun for drugs is not use. Better to receive than to give. Better to receive. Let me interrupt you there, because even though obviously the district court didn't have the benefit of Watson, the district court made it absolutely clear that it was going to impose the 120-month sentence. And I'm looking at a page of the transcript where he talks about sentencing and the alternative and says, even ignoring the four-level enhancement, it would appear to me that the 120 months would be an appropriate sentence. Why isn't any Watson error simply harmless on this record? Well, Your Honor, and I was prepared for that question, I would point the court to ER-19. And basically in that case, what Mr. Winfrey's attorney had made is several objections to the criminal history calculation. And those objections were essentially overruled by the district court, because the district court at that time was focusing on a guideline range of either 140 to 175 or 130 to 162, given that four-level bump. And basically had said, you know what, these criminal history points are irrelevant giving those two ranges. But if we take off that four-level, then he's down to, I think, 110 to 100 and now I'm the court was clearly aware of that. And says, you know, this four-level enhancement is sort of irrelevant anyway, because the statutory maximum is 120 months. Right. And that's what I'm planning to give. And that falls within the lower range. And repeats that several times. Right. But I think if you look at ER-52, which is the page that you're talking about, Your Honor, he's saying that if I went to level 24, in other words, if I take that four levels off, then we go down to a sentencing range of 100 to 125 months, and my 120-month sentence falls right in the middle of that. So even if we disregard the four-level enhancement, I could go with that. The problem is that he also disregarded objections to criminal history score. And Mr. Winfrey was at a 13, which is right on the edge. So if any one of his objections had been granted on his criminal history score, then we bump down to a much lower criminal history that doesn't include the 92 to 115. So you're saying that the judge's determination on the criminal history score was erroneous? I'm not saying that it was erroneous. I'm saying that he refused to consider the objections because of his determination on the four-level. If you, again, on ER-19, he says he's addressing objection number 6, and he says this will not affect sentencing because even without those two points, the sentencing that is involved is above the statutory maximum in that case. So he's assuming I don't need to even really consider criminal history because of the four-level enhancement. We're way above the statutory maximum. But, again, when you drop down the four levels, that goes to 100 to 120. And if any of the criminal history objections had been granted, that could drop it down below 100, 92 to 15, basically. And I'm not saying that those could be granted or those are granted. I'm saying that the judge refused to consider them because of his decision on the four-level enhancement and his belief of the guidelines at that time. So when we're looking at this under was this truly harmless, I would say that given this record, it could be, it could be, it could not be harmless because he refused to consider these objections in light of his reasoning on the four-level enhancement. Now, obviously, under Gall and the advisory guidelines, he could go down and give them the exact same sentence after addressing the objections to the criminal history score, and that's certainly his prerogative. So on this issue, I may ask, what would you like us to do? You want us to? Remand for resentencing. Remand for resentencing in light of the Supreme Court's decision that the use enhancement was wrong. Your Honor, and that's. Ask him to reassess the objections on the criminal history. That's correct, Your Honor. And I would point out that under 18 U.S.C. 3742F, it states that if the court of appeals determines that the sentence was imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further proceedings. So we have a clear incorrect application. Of course, the question is harmlessness, but I would suggest that because other resentencing should be done in this case, it was clearly that the objection was preserved. I have about four minutes left. Are there other areas? Just on the question of the two bys, you object to the admission of evidence as the first by. The second by seems properly within, I mean, as part of the transaction. The first by, I have a bit of trouble with that. But what difference ultimately does it make? Well, Your Honor, I think that, again, the government is trying to show that Mr. Winfrey was a drug dealer. And that's what they were going for. And it's frustrating in this case that they insisted on introducing that first by because it was, quote, inextricably intertwined. And it would be too hard for the witnesses to try and bifurcate that out, which is really not the case. I mean, the witness could say. Well, let's say we accept that. I accept that. I'm still trying to understand, though. It was pretty clear from the second transaction and the evidence about that, that he was a drug dealer. Right. I hate to always keep saying at the end of the day. It's a cliche. But at the end of the trial, does it really make a difference? I think it does, Your Honor, because, again, one transaction, you may think one thing or another. But when you've got two transactions back-to-back, and she's saying I've been there several times, the natural inference that the jury was led to believe is that he was a drug dealer, which just basically threw out everything that the district court tried to do to try and keep that information out. This is a drug possession or a drug possession. This is a gun possession case. Gun possession case. And the only issue was whether he knew he possessed that gun. So his drug dealing history really had nothing to do with this case. So, again, we would say that the introduction of that evidence under 404B was not harmless. Any other questions? Thank you. Thank you. Counsel. Good afternoon, Your Honors. Good afternoon. May it please the Court, Russ Smoot for the United States. The government is prepared to address all four issues that were raised. Why shouldn't we remand? Isn't it presumptuous of us to read, even with the judge's statements, about what he'd do anyway? If you take that out, I always have trouble when the whole landscape changes, saying, are you really sure? And that sort of came out of the blue. So why shouldn't we vacate and remand, let him go through the resentencing? The government agrees with Judge Kuda's comments concerning being harmless there. I know that that wasn't fully. Well, I was prepared to say that anyway. It wasn't fully fleshed out in the government's appeal. Oh, I'm sorry. How does the government respond to the appellant's argument that the judge did not address some criminal history issues because of the enhancement? First, Your Honor, I believe that the Court did address them, whether they addressed them favorably or not, to the defendant as a separate issue. Presuming, as the defendant or assuming an arguendo, as the defendant has, that the Court just refused to address that particular issue, I would note that this issue of not addressing objection number six was never raised on appeal. So suddenly now it's raised the first time at oral argument that this is something that would have made a difference in the case. So, first, I think to answer Your Honor's question is that, yes, the Court did address all of the objections. The Court did not necessarily address them in the defendant's favor. But they were addressed in some manner or another, so it wasn't that they were ignored. And then, secondly, these issues were not preserved nor raised appeal until just  Certainly the district court just glancing at this, because since it wasn't raised to us in briefs, we haven't had a chance to analyze it either. But it does appear that the Court says it doesn't resolve the objection of the defendant as it would have to do under Rule 32. So I'm wondering whether when you take everything into the mix how it might affect. But you obviously haven't had a chance to analyze it either, or have you, that issue? No. This is the first you've heard about it as well. That is correct. And I would note, I guess going back to the government's position in it being harmless, I think that there's support in the record for that, specifically what Your Honor had mentioned, that the Court in page 27 of the excerpts of records, specifically the Court states that I will candidly advise that I'm probably going to view this alternatively for purposes of sentencing. Because in reality, even those added enhancements, this case is such that it would be beyond the Court's statutory maximum, which will not be imposed. There are other references, not as clear as that, but other references, in fact, to the difference in the guideline analysis to the Court's consideration of the guidelines. The Court considered that here's what it would be without the enhancement, here's what it would be with the enhancement. The Court used the term that it's academic, because each falls within the guidelines. And the Court recognized that the guidelines were advisory. Ultimately, after consulting the guidelines, and in hindsight, after Watson, realizing that adding those four enhancements, the Court may not have done that, most likely would not have, the Court still went through the 3553 factors and determined that the maximum possible sentence of 120 months was reasonable and appropriate. So I guess when we look in terms of, say, Supreme Court's decisions in Gall and such, in saying, I think I wrote it down, I want to write, but significant procedural error, I think the Court can look at whether or not the error was significant or harmless. In this case, the Court was aware of how the guidelines would come out under both applications, weighed those, ultimately added the enhancement. I guess I would submit unnecessarily, and then did the factor analysis and then came to the conclusion of what a reasonable appropriate sentence was. On the shift over to the question I asked the defense counsel, bringing in the first transaction, when this is not a drug dealing issue, it's a gun possession issue, wasn't that overkill? Why was it necessary to bring that in? You could have just gone with the evidence of how she bartered the gun. The government submits that it was necessary and falls into being inextricably intertwined because of the course of events that occurred that day. If the course of events begins to where the two witnesses, Mr. Lanning and Ms. Christensen, suddenly decide that they're going to start from point B after the first transaction, say, okay, we're going to go get some crack cocaine, and then the gun is exchanged for that crack cocaine, I think it leaves, the story starts at a position that doesn't give a full and complete picture to the jury. Well, the whole issue was the gun. I mean, it was. It's true, but. You need the earlier cash buy. Well, it. So it begins at point B. That's what you're trying to prove. He got a gun in exchange for drugs. Well, Your Honor, I would submit, respectfully submit, that the story to the jury is more complete as to how the witnesses come together and the course of the days present. Well, you may like it to be more complete, but to say it's inextricably intertwined, I find that a stretch of inextricable. But I guess we disagree about that. The government differs, Your Honor, on that. I would follow up, however, Your Honor, and indicate that I think in the grand scope of things, at the end of the day, as the court noted, that if the jury was to hear that Ms. Christensen exchanged a firearm, placed a firearm into the defendant's hand for $80 worth of crack cocaine in the evening, then the jury is not going to be, I would submit, that the jury would not be emotionally inflamed or substantially prejudiced by the fact that earlier in that day, the same person obtained $40 worth of crack cocaine from the defendant. So in that manner, in the end of the day, Your Honor, that that would also be a harmless error, if error at all. Okay. I know there are a couple of other issues, but I understand that the Court is concerned about those two. If there are no more questions, then I will rest, Your Honor. Thank you. Thank you. Counsel brought up the fact that the question about the improperly calculated criminal history was not raised on appeal, and I agree with that. However, the issue is whether the material error in calculating the guidelines was harmless, and in doing a harmless error analysis under that situation, I think we look at the totality of circumstances in the entire record, and that is one of the issues that was raised below at the district court and not decided because of the Court's decision. So I think that does affect the harmless error analysis. But the government certainly had no opportunity to look at what you're now saying made the error not harmless and give us its version of how that, how those statements by the Court fed into the overall decision. Well, it's in the record. I understand that the government was not prepped for this particular argument, but in view of a harmless error analysis, the totality of the record would be reviewed. And also, of course, Watson wasn't decided until all of the briefing in this case was finished, which was on December 10th. So it's kind of. We do allow 28-J letters, though. I understand that. And, again, Watson doesn't really go to the harmlessness of it. It just basically says that this was a material error. We'd be happy to provide supplemental briefing if the Court would like us to supplement on the harmless error, and I'd be happy to do that. That's all right. We'll let you know if that's necessary. Okay. All right. Thank you, Your Honor. All right.  And the case argued is submitted. We'll stand in adjournment for the day.
judges: Fisher, Gould, Ikuta